294 U.S. 158 (1935)
FORREST
v.
JACK, RECEIVER.
No. 214.
Supreme Court of United States.
Argued December 11, 1934.
Decided February 4, 1935.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE TENTH CIRCUIT.
*159 Mr. James F. Pierce for petitioner.
Mr. George P. Barse, with whom Messrs. Will L. Hoyt and F.G. Awalt were on the brief, for respondent.
MR. JUSTICE BUTLER delivered the opinion of the Court.
The respondent, receiver of an insolvent national bank, brought this action in the federal court for the district of Utah against the petitioner to recover an assessment made by the Comptroller of the Currency. That court held him not entitled to recover. The Circuit Court of Appeals reversed. 71 F. (2d) 264.
August 17, 1917, Henry Forrest died testate owning six shares of the Nephi (Utah) National Bank stock registered in his name. By his will he gave $1,000 to his niece and the rest of his property to his widow for life, and whatever thereof she might have at death in equal *160 shares to their son, who is the petitioner here, and their daughter. The will was probated in the district court of Juab county, Utah, and petitioner was appointed administrator with the will annexed. Before decree of distribution he and the daughter transferred all their rights to their mother.
March 11, 1920, the court made an order reciting that the estate had been closed, and approved and settled the administrator's final account, and on the next day it entered its decree directing that the property belonging to the estate be distributed to the widow. The administrator made distribution as ordered. The property so transferred included the bank stock, other personal property and real property. Shortly after the distribution, the widow deeded to her daughter some of the real estate and to the petitioner the balance which is still held by him and worth more than $2,000. Respondent says, and we assume, that these conveyances were made without consideration. As petitioner knew, the stock was not transferred on the books of the bank but continued to stand in the name of his father.
After distribution the bank paid a dividend to its stockholders and sent petitioner a check payable to the estate covering the amount applicable to the six shares. He deposited the check in his mother's account in the bank, informed its officers that the stock belonged to her, and suggested that thereafter checks for dividends be made to her. July 4, 1931, she died, having no property other than the bank stock. November 17, 1931, petitioner applied to the court to be discharged as his father's administrator. November 18, having found the certificates covering the six shares among his mother's effects, he delivered them to the bank to be held for her estate. December 1, the court granted his application for discharge. The bank closed the same day. The Comptroller appointed respondent receiver and, March 8, 1932, made an *161 assessment of $100 on each share of the stock. Petitioner refused to pay the assessment on the shares formerly owned by his father.
The complaint asserts devastavit in that the petitioner as administrator failed to pay into court or to retain property sufficient to cover the assessment, or to transfer the stock to a solvent person, and disposed of the entire estate except the stock. It also alleges that the real property deeded petitioner by his mother, having been conveyed to him without consideration, is subject to a lien for the amount of the assessment. The case was tried without a jury. At the close of the evidence, respondent moved for judgment against petitioner personally and, if that be denied, for transfer of the case to the equity side and a decree against the real property. Petitioner moved for judgment. The court denied respondent's motion and granted that of petitioner. The Circuit Court of Appeals held petitioner had not committed devastavit, but that, as the stock stood on the books of the bank in the name of the deceased, his estate remained liable and that petitioner held the real property subject to the assessment. It remanded the case to the district court, directed its transfer to equity, and that decree be entered in conformity with its opinion.
Title 12, U.S. Code, § 64, provides that "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. .. ." And see § 63. Section 66 provides that "Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds *162 would be, if living and competent to act and hold the stock in his own name."
The liability of stockholders is based upon the statute, § 64.[1] As a general rule, the person in whose name the stock stands on the books of the bank is liable.[2] but the actual owner may be held although the stock has not been registered in his name.[3] The liability does not altogether cease on the death of the owner but, as limited and defined by § 66, attaches to his estate.[4] The fiduciaries are exempt but the property belonging to the estate is liable as would be the deceased if living. No cause of action arises until the assessment is made by the Comptroller and, so far as concerns the need and amount, his findings are conclusive.[5] He acts under federal authority, and in respect of determinations, orders and assessments may not be trammeled, controlled or prevented by state laws.[6] *163 In the absence of federal enactments relating to procedure for enforcement of the liability imposed by § 66, collection is to be made in accordance with state laws governing claims against estates of deceased persons, at least to the extent that such laws are not inconsistent with enforcement of the liability imposed by national authority.[7] There is no suggestion that the laws of the State of Utah discriminate against or are inadequate for the just and convenient enforcement of liability imposed, § 66, against estates of deceased stockholders. There can be no liability on account of assessments made after complete administration, final distribution of all the property and the extinguishment of the estate.
In this case, the Comptroller's assessment was made more than eleven years after complete distribution and long after decedent's widow as distributee became the actual, though not the registered, owner of the stock, and liable under § 64. The decree of March 11, 1920, closed the estate. The fact that the administrator was not formally discharged until December 1, 1931, about the time the bank failed, is without significance here, as the Comptroller's assessment was not made until March 8, 1932. As the estate had ceased to exist before the bank became insolvent, the Circuit Court of Appeals rightly held that petitioner as administrator was not required by Utah law (R.S., 1933, § 102-9-26) to retain or pay into court any property or money to cover possible future liability in respect of the stock that had been decreed and distributed to the widow. There is nothing to support the allegation of devastavit.
Section 102-9-28 provides: "When the accounts of the administrator or executor have been settled and an order *164 made for the payment of debts and distribution of the estate, no creditor whose claim was not included in the order for payment has any right to call upon the creditors who have been paid, or upon the heirs, devisees or legatees, to contribute to the payment of his claim. . . ." Viewed in the light of that provision, it is plain that the distribution fully extinguished the estate. It follows that petitioner's real estate that had belonged to decedent never became liable for the assessment.
In Matteson v. Dent, 176 U.S. 521, relied on by the court below and by respondent, this court, affirming the supreme court of Minnesota (70 Minn. 519, 73 N.W. 416; 73 Minn. 170, 75 N.W. 1041) held the estate not to have been extinguished when the bank became insolvent or when the assessment was made. The facts of that case were similar to those now before us. The estate of a deceased stockholder of a national bank was, after administration, fully distributed without a transfer of the stock on the books of the bank. Later, because of its insolvency, the Comptroller closed the bank and made an assessment against its stockholders. He brought suit and obtained judgment against distributees under and in accordance with the General Statutes of Minnesota, 1894, § 5918, which declares: "The next of kin of a deceased person are liable to an action by a creditor of the estate, to recover the distributive shares received out of such estate, or so much thereof as may be necessary to satisfy his debt . . ." That this statute utterly differs from that of Utah (§ 102-9-28) clearly appears from the opinions of the Minnesota supreme court. In the first one it said (p. 522): "The claim here in question was a contingent claim, which did not become absolute until after the time to file claims had expired, and the estate was distributed to the widow, heirs and next of kin. Under these circumstances, the plaintiff may maintain an action under G.S., 1894, c. 77, [which includes *165 § 5918] against the distributees to recover of them the amount of the liability, not exceeding the amount of the distributive share received by each." On the second appeal, the court overruled the contention that the liability of each distributee was limited to the amount of the bank stock he received from the estate. And this court, following and interpreting these decisions and affirming the judgment, held that, although the property had been allotted and delivered to the persons thereunto entitled under the decree of the probate court, the estate had not been extinguished but continued to exist subject to the liability defined in § 66. As by Minnesota law  contrary to that of Utah  decedent's estate after distribution continued to be subject to the enforcement of claims, that case does not support respondent's contention here.
The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed.
NOTES
[1] McClaine v. Rankin, 197 U.S. 154, 161. Christopher v. Norvell, 201 U.S. 216, 225. United States v. Knox, 102 U.S. 422, 424. Keyser v. Hitz, 133 U.S. 138, 151. McDonald v. Thompson, 184 U.S. 71, 73-74. Studebaker v. Perry, 184 U.S. 258, 261.
[2] Whitney v. Butler, 118 U.S. 655, 660. Richmond v. Irons, 121 U.S. 27, 58. Matteson v. Dent, 176 U.S. 521, 530.
[3] Early v. Richardson, 280 U.S. 496, 499. Ohio Valley National Bank v. Hulitt, 204 U.S. 162, 168. Rankin v. Fidelity Trust Co., 189 U.S. 242, 252. Pauly v. State Loan & Trust Co., 165 U.S. 606, 619. Anderson v. Philadelphia Warehouse Co., 111 U.S. 479, 483. Bowden v. Johnson, 107 U.S. 251, 261. National Bank v. Case, 99 U.S. 628, 631.
[4] Matteson v. Dent, 176 U.S. 521, 524. Zimmerman v. Carpenter, 84 Fed. 747, 751. Drain v. Stough, 61 F. (2d) 668, 669.
[5] Kennedy v. Gibson, 8 Wall. 498, 505. Casey v. Galli, 94 U.S. 673, 677. National Bank v. Case, 99 U.S. 628, 634-635. United States v. Knox, 102 U.S. 422, 425. Bushnell v. Leland, 164 U.S. 684. McDonald v. Thompson, 184 U.S. 71, 72, 76. McClaine v. Rankin, 197 U.S. 154, 159, 160. Rankin v. Barton, 199 U.S. 228, 232.
[6] Rankin v. Barton, 199 U.S. 228, 232. Christopher v. Norvell, 201 U.S. 216, 225. Cf. Davis v. Elmira Savings Bank, 161 U.S. 275, 284.
[7] McClaine v. Rankin, 197 U.S. 154, 158. McDonald v. Thompson, 184 U.S. 71. Matteson v. Dent, 176 U.S. 521, 528. Davis v. Weed, 7 Fed. Cas. 186, 187. Cf. Yonley v. Lavender, 21 Wall. 276, Security Trust Co. v. Black River National Bank, 187 U.S. 211, 227, et seq. Williams v. Cobb, 242 U.S. 307.